878 F.2d 347
 Roy Joseph VERONIE, Plaintiff,
and
First Southern Insurance Company, Plaintiff-intervenor-Appellant,
v.
Tony GARCIA, Individually and d/b/a Tony's Paint and Body
Shop, Inc., a New Mexico Corporation, Defendant-Appellee.
 No. 88-1426.
 United States Court of Appeals,
Tenth Circuit.
 July 3, 1989.
 
 Gregory Biehler of Beall, Pelton, O'Brien & Brown, Albuquerque, N.M. (Kevin M. Brown, on the brief), for plaintiff-intervenor-appellant.
 Paula J. Cotitta of Dines & McCary, Albuquerque, N.M. (Jim Dines of Dines & McCary, Albuquerque, N.M., with her, on the brief), for defendant-appellee.
 Before MOORE, BARRETT, and EBEL, Circuit Judges.
 EBEL, Circuit Judge.
 
 
 1
 The issue presented in this case is whether a Louisiana workers' compensation reimbursement statute, La.Rev.Stat.Ann. 23:1102(C) (1983), violates the due process clause or the equal protection clause of the Fourteenth Amendment of the United States Constitution. We find that the statute violates neither clause. We reverse and remand.
 
 FACTS
 
 2
 The facts in this case are undisputed. On September 1, 1983, plaintiff Roy Joseph Veronie ("Veronie"), a teamster, sustained a severe work-related injury when he fell while climbing into the cab of a truck when the grab handle broke off. Veronie submitted a workers' compensation claim to his employer's workers' compensation carrier, First Southern Insurance Company ("First Southern"), pursuant to which First Southern paid $134,964.33 in compensation and medical benefits.
 
 
 3
 On January 9, 1985, Veronie filed suit in the United States District Court for the District of New Mexico against appellee Tony Garcia d/b/a Tony's Paint and Body Shop, Inc. ("Garcia"), who had repaired the grab handle that broke loose. The complaint alleged that Garcia was liable for Veronie's injuries on the grounds that Garcia negligently repaired the grab handle, which negligence proximately caused injuries to Veronie.
 
 
 4
 Pursuant to La.Rev.Stat.Ann. 23:1102(A) (1983),[1] First Southern intervened in the litigation alleging that, under the Louisiana Workers' Compensation Law,[2] it was entitled to recover any compensation and medical benefits that it had already paid to Veronie.
 
 
 5
 Garcia subsequently settled Veronie's claim against him for $12,000 without First Southern's approval. Veronie and Garcia submitted to the district court a joint motion to dismiss Veronie's claim with prejudice based on their settlement, and the district court granted that motion on February 3, 1987.
 
 
 6
 On March 25, 1987, First Southern filed a motion for summary judgment against Garcia for reimbursement of all benefits that First Southern had previously paid to Veronie, pursuant to La.Rev.Stat.Ann. 23:1102(C) (1983), which provides:
 
 
 7
 If the third party defendant or his insurer fails to obtain written approval of the compromise from the employer or his insurer at the time of or prior to such compromise, and the employee fails to pay to the employer the total amount of compensation benefits, medical benefits, attorney's fees, and penalties out of the funds received as a result of the compromise, the third party defendant or his insurer shall be required to reimburse the employer or his insurer to the extent of the total amount of compensation benefits, medical benefits, attorney's fees, or penalties previously paid to or on behalf of the employee to the extent said amounts have not been previously paid to the employer by the employee pursuant to the provisions of Subsection B of this Section.
 
 
 8
 First Southern argued in support of its motion for summary judgment that it was entitled to judgment against Garcia "because of his failure to obtain written approval of the settlement from First Southern and the failure of Veronie to pay to First Southern the total amount of compensation benefits he received from the settlement." Memorandum in Support of Plaintiff in Intervention's Motion for Summary Judgment, p. 2.
 
 
 9
 Garcia argued in response that La.Rev.Stat.Ann. 23:1102(C) (1983) is unconstitutional because it deprives him of property without any hearing or determination of liability. Memorandum in Response to Intervenor's Motion for Summary Judgment, p. 11-13. The district court agreed with Garcia, and, on November 25, 1987, denied First Southern's motion for summary judgment on the grounds that La.Rev.Stat.Ann. 23:1102(C) (1983) "is unconstitutional in that it violates the constitutionally guaranteed due process procedures of the employees and third parties therein." Order Denying Intervenor's Motion for Summary Judgment, p. 2. In its order, the district court also stated that "an immediate appeal from the Order may materially advance the ultimate termination the litigation." Id. First Southern subsequently petitioned this court for permission to appeal pursuant to 28 U.S.C. Sec. 1292(b), which permission was granted.
 
 PROCEDURAL DUE PROCESS
 
 10
 The first issue on appeal is whether La.Rev.Stat.Ann. 23:1102(C) (1983) violates the procedural due process guarantees of the Fourteenth Amendment.[3] Garcia argues that section 23:1102(C) violates the procedural due process because it allows First Southern to obtain a money judgment in the amount of $134,964.33 against him without a full trial on the merits as to Garcia's liability to Veronie.[4]
 
 
 11
 Garcia fails, however, to distinguish between the original tort claim brought against him by Veronie, which he settled for $12,000, and the statutory liability to First Southern that he incurred when he settled with Veronie without First Southern's approval. Garcia had the option of litigating his liability to Veronie for the underlying tort claim, but chose instead to settle it by payment to Veronie of $12,000 without first obtaining the required approval from First Southern. Garcia's culpability to Veronie is not relevant to the claim brought against him by First Southern because First Southern is not claiming derivatively through Veronie. Rather, First Southern's claim is that Garcia breached a separate duty owed to it--a statutory duty not to settle a claim brought by an injured employee, such as Veronie, without first obtaining the consent of the workers' compensation insurer that has made unreimbursed payments to the employee.
 
 
 12
 The elements of this statutory cause of action created by section 23:1102(C) are: (1) a settlement between the injured employee and the third-party tortfeasor; (2) lack of written approval of the settlement from the employer or insurer; and (3) failure of the employee to pay back to his employer or insurer the total amount of compensation benefits previously received by him from his employer or insurer. The statute imposes a duty on the third party tortfeasor not to make any settlement payments to the injured party until either he has obtained written approval from the employer or insurer, or the employee has reimbursed the employer or insurer all the funds previously received. If that duty is breached, the statute imposes liability on the third party tortfeasor for the full amount previously paid by the employer or insurer to the employee less any sums the employee has reimbursed to the employer or insurer.
 
 
 13
 Pursuant to this statutory cause of action, before First Southern is entitled to a money judgment against Garcia, it must invoke the judicial process and prove the elements of the statutory cause of action. First Southern did just that by intervening in Veronie's action against Garcia and moving for summary judgment. At that point, Garcia had the opportunity to deny the allegations and defend his position on the merits. Accordingly, we find that section 23:1102(C) does not violate the due process clause of the Fourteenth Amendment.
 
 EQUAL PROTECTION
 
 14
 The second issue on appeal is whether La.Rev.Stat.Ann. 23:1102(C) (1983) violates the equal protection clause of the Fourteenth Amendment.[5] Garcia argues that even if section 23:1102(C) does not violate his right to due process, we should affirm the district court's decision because the statute gives employers and their insurers favored treatment under the law at the expense of employees and third party tortfeasors.[6]
 
 
 15
 In the absence of a suspect class or fundamental interest, legislation that is challenged as denying equal protection will be sustained if the classification drawn by the legislation is rationally related to a legitimate state interest. Pennell v. City of San Jose, 485 U.S. 1, 108 S.Ct. 849, 859, 99 L.Ed.2d 1 (1988). The rational relationship standard of review reflects the Supreme Court's position that courts do not sit as superlegislatures and will not strike down state laws because they may seem unwise, improvident, or contrary to a particular school of thought. Cf. Ferguson v. Skrupa, 372 U.S. 726, 731-32, 83 S.Ct. 1028, 1031-32, 10 L.Ed.2d 93 (1963). In short, in the realm of economic legislation, "it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." New Orleans v. Dukes, 427 U.S. 297, 304, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976).
 
 
 16
 In enacting section 23:1102(C), the Louisiana legislature overruled the jurisprudentially established rule in Verbois v. Howard, 322 So.2d 110 (La.1975), and Crabtree v. Bethlehem Steel Corp., 284 So.2d 545 (La.1973), that although an intervening employer could obtain preference in the apportionment of damages received by an employee through a judgment, he could receive no credit for sums received by the employee through a compromise. Babin v. Saturn Engineering Corp., 501 So.2d 857, 860 (La.App.1987). Section 23:1102(C) appears to be rationally related to a number of legitimate state interests: it adjusts the economic burdens within the workers' compensation arena; it promotes the employer's or insurer's substantial economic interest in the litigation between the employee and the third-party tortfeasor; and it promotes judicial economy by encouraging all interested parties to participate in settlement negotiations. Cf. Babin, 501 So.2d at 860-61.
 
 
 17
 While we recognize that section 23:1102(C) imposes a harsh penalty on third party tortfeasors who settle without employer or insurer approval, the purposes behind the statutory right of reimbursement are legitimate ends of government, and section 23:1102(C) is rationally related to those ends. Therefore, we hold that section 23:1102(C) does not violate the equal protection clause of the Fourteenth Amendment.
 
 CONCLUSION
 
 18
 We conclude that La.Rev.Stat.Ann. 23:1102(C) (1983) is constitutional under the Fourteenth Amendment guarantees of procedural due process and equal protection. Accordingly, we REVERSE the district court's decision and REMAND for consideration of the merits of First Southern's claim against Garcia under section 23:1102(C).
 
 
 
 [1]
 La.Rev.Stat.Ann. 23:1102(A) (1983) provides:
 If either the employee or his dependent or the employer or insurer brings suit against a third party as provided in R.S. 23:1101, he shall forthwith notify the other in writing of such fact, and of the name of the court in which the suit is filed, and such other may intervene as a party plaintiff in the suit.
 (Emphasis added.)
 
 
 [2]
 La.Rev.Stat.Ann. 23:1101 et seq. (1983)
 
 
 [3]
 The due process clause provides: "No state shall ... deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, Sec. 1
 
 
 [4]
 It is undisputed on appeal that if First Southern should prevail under this statute, Garcia would be liable to First Southern for $134,964.33
 
 
 [5]
 The equal protection clause provides: "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, Sec. 1
 
 
 [6]
 Although Garcia did not argue before the district court that the statute violates the equal protection clause, he did raise it in his answer brief, and First Southern addressed it in its reply brief without objection on the grounds it was not addressed before the district court