**Ben GYADU, Plaintiff,**

v.

**WORKERS' COMPENSATION COMMIS-SION, Workers' Rehabilitation Commission, and John A. Mastropietro, Commissioner, Defendants.**

No. 3:96–CV–0043 (GLG).

United States District Court,
D. Connecticut.

June 24, 1996.

Ben Gyadu, Waterbury, Connecticut, pro se.

Richard Blumenthal, Attorney General, William J. McCollough, Assistant Attorney General, Lisa Guttenberg Weiss, Assistant Attorney General, State of Connecticut, Hartford, Connecticut, for defendants.

### *Opinion*

GOETTEL, District Judge.

Defendants have moved this Court to dismiss Plaintiff's Amended Complaint, in which Plaintiff seeks to hold Defendants liable under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1983 for their alleged failure to provide Plaintiff with certain benefits and rehabilitative services to which he claims entitlement under Connecticut's Workers' Compensation Act, C.G.S.A. §§ 31–275 *et seq.* Plaintiff also asks this Court to declare cer-

tain provisions of the Connecticut Workers' Compensation Act unconstitutional. Defendants' Motion to Dismiss is premised upon their sovereign immunity under the Eleventh Amendment to the United States Constitution; this Court's lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1); Plaintiff's failure to state a claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(6); and Plaintiff's failure to exhaust administrative remedies.

■ Plaintiff has filed this action *pro se*, and, accordingly, we heed the directive of the Second Circuit that, when considering the sufficiency of a *pro se* complaint, we must construe it liberally, applying less stringent standards than when a plaintiff is represented by counsel. *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.1983); *Branham v. Meachum*, 77 F.3d 626, 628–28 (2d Cir.1996); *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699 (2d Cir.), *cert. denied*, 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972).

### FACTS

The following is a synopsis of the facts set forth in Plaintiff's 28–page Amended Complaint, as best as we can discern them. Plaintiff is a workers' compensation claimant, who has received various worker's compensation benefits since sustaining a job-related injury to his hand on August 15, 1986. Plaintiff alleges that he received medical treatment until 1991, when he was released to look for another job within his physical capabilities, pending another surgery. Apparently, Plaintiff has had great difficulty in finding another job, particularly one which would compensate him commensurately with what he was earning prior to his injury. (The Amended Complaint does not indicate what Plaintiff's occupation was prior to his injury). He complains that the Commissioner has encouraged him to look for jobs which he cannot perform, in an effort to get Plaintiff "off the system." Plaintiff alleges that this has caused him a great deal of anxiety, distress, and financial hardship.

Plaintiff, in general, complains of what he describes as the Commission's "arbitrary and capricious" handling of his claims. He alleges that the Commission has made it possible for the insurance carrier to withhold various benefits. As examples, he cites Defendants' failing to take action when the carrier "dishonored its agreement" to pay dependency benefits,[1] and when the carrier discontinued his weekly section 308a benefits (C.G.S.A. § 31–308a) for a three-week period in late December of 1995.[2] He alleges that the Commissioner gave his blessing to this "illegal action."[3] He also challenges the Com-

---

1. We do not have the record of the Workers' Compensation hearings before us. However, it appears from Plaintiff's 28–page Amended Complaint that Plaintiff was claiming a dependency allowance for his late sister's children for whom he claims he was providing support. Section 31–308b, C.G.S.A. (repealed effective July 1, 1991), provided for a dependency allowance of ten dollars per week for each of an employee's children or stepchildren, under certain circumstances. Apparently, this allowance was disallowed, and Plaintiff appealed. He states in his Amended Complaint "[i]t is 2 years ago now since the plaintiff appealed a decision, which arbitrarily denied him dependency allowance and till to date he has not had a hearing on that appeal...." (Amended Complaint at 8).

2. Section 31–308a of the Connecticut's Workers' Compensation Act covers "[a]dditional benefits for partial permanent disability," which may be awarded by the Commissioner after the payments provided in section 31–308 have been paid for the period set forth in that section. Subsection (a) of that section concludes that "[a]dditional benefits provided under this section shall be available only to employees who are willing and able to perform work in this state." Subsection (b) provides that [n]otwithstanding the provisions of subsection (a) of this section, "additional benefits provided under this section shall be available only when the nature of the injury and its effect on the earning capacity of an employee warrant additional compensation."

In his Amended Complaint, Plaintiff describes the circumstances surrounding the termination of his 308a benefits for a period of three weeks as follows: Plaintiff states that the carrier stopped paying his benefits because they were informed that plaintiff was "looking for work his own way." The carrier, after stopping the weekly benefits on December 22, 1995, then wrote the Commission for an informal hearing. Plaintiff asked the Commission to intercede on his behalf to require the carrier to reinstate his benefits, but the Commission took no action, pending the informal hearing on January 4, 1996.

3. We do not have the Commissioner's ruling before us, but from what we can discern from the Amended Complaint, it appears that the Commissioner at the hearing ruled that, because

missioner's calculation of his weekly benefits "based on an arbitrary figure he chose as the plaintiff's current earnings capability," which resulted in a decrease of $97.00 in Plaintiff's weekly benefits. He contends that the Commission should have increased his weekly benefits when the statutory maximum was increased in 1991 (pursuant to P.A. 91–339, § 29, eff. Oct. 1, 1991), some five years after the date of his injury. He complains about the Commissioner's use of an allegedly incorrect discount rate in calculating the lump sum payment (*see* C.G.S.A. § 31–302) of a portion of his benefits.[4] And, he contends that he has been denied proper rehabilitative services and job search benefits under section 31–308, C.G.S.A., thus requiring him to take out student loans [5] and exhaust other benefits.[6] The only one of these adverse actions that Plaintiff has appealed through the administrative appeals process set forth in the Workers' Compensation Act is the Commission's denial of a dependency allowance.

In this case, Plaintiff seeks as equitable relief, *inter alia*, an order that would require the Defendants to provide the Court with specific strategies which they would pursue to find "ways and means to help plaintiff secure a gainful employment whose income would, at least commensurate with the plaintiff's income 10 years ago ...;" to adjust Plaintiff's weekly benefits; to pay the cost of Plaintiff's training, including his student loan; to provide on-the-job training assistance; to "recover" his "specific award" for the "permanent partial loss of the use of his master hand," which award he exhausted in his search for a job because of Defendants' denial of benefits; to refund three weeks of weekly benefits that were withheld; and to pay the dependency allowance which was denied to Plaintiff. He also demands that this Court "[m]ake the defendants state that not until they assist the plaintiff in any way possible to secure a gainful employment, they should continue to support plaintiff."

As money damages, he asks this Court award damages to compensate Plaintiff for loss of income and to reasonably compensate him for injuries he has suffered because of Defendants' actions.

In addition, he challenges as unconstitutional (a) Defendants' actions which denied Plaintiff section 308, C.G.S.A. § 31–308, benefits; (b) the law or regulation which made

---

these benefits were discretionary and because the duration "within which the benefits was [sic] granted was exhausted," the carrier was entitled to discontinue the benefits prior to an informal hearing.

**4.** Section 31–302, C.G.S.A., provides in relevant part that

[c]ompensation payable under this chapter shall be paid at the particular times in the week and in the manner the commissioner may order ...; but, when he finds it just or necessary, the commissioner may approve or direct the commutation, in whole or in part, of weekly compensation ... into a single lump sum.... In any case of commutation, a true equivalence of value shall be maintained, with due discount of sums payable in the future....

Plaintiff complains of the Commissioner's use of the current discount rate rather than the discount rate applicable at the time of his accident. The state court in *Gyadu v. Chairman, Workers Compensation Commission*, No. 122258, 1994 WL 711199 (Conn.Super. Memorandum of Decision, Dec. 9, 1994) (*see* note 5, *infra*), found that the Commissioner's decision was an order or decision under C.G.S.A. § 31–301(a), subject to the administrative review procedures of that section.

**5.** Although not mentioned in the Plaintiff's Amended Complaint, the Connecticut Superior Court notes in a Memorandum of Decision dated December 9, 1994, dismissing Plaintiff's state court complaint for failure to exhaust administrative remedies (see discussion at pages 6–7, *infra*), that the Plaintiff, while disabled, received his bachelor's degrees in geology in 1989–90, and in economics in 1989–90, as well as his masters degree in public administration in June of 1994. (The Decision also mentions a bachelor's degree in business administration in 1980–81 and a master's degree in business administration in 1981–82. However, based on the information that we have before us on this Motion to Dismiss, it appears that these were prior to the injury that is the subject of his complaints in this action). See *Gyadu v. Chairman, Workers Compensation Commission*, No. 122258, 1994 WL 711199 (Conn.Super., Memorandum of Decision, Dec. 9, 1994).

**6.** Plaintiff complains that he was denied section 308, C.G.S.A. § 31–308, benefits while he was looking for work. Instead, he states that he was given a specific award under section 31–308a for the permanent partial disability, C.G.S.A. § 31–308a, which he claims that he exhausted in his job search efforts.

Defendants take this action; (c) section 31–308a, C.G.S.A., which he alleges allowed the Commissioner to encourage the carrier to withhold and discontinue benefits without due process and allowed the Commissioner to use an arbitrary and capricious means to determine Plaintiff's weekly benefits; (d) the informal hearing process as a violation of due process; (e) the law that establishes the maximum weekly compensation rate,[7] "as it subjects prior injury high income earning claimants, as the plaintiff, to unfair and unequal treatment and therefore injustices;" and (f) section 31–284, the exclusive remedy provision of the Workers' Compensation Act, applicable to employers, as a violation of due process.

As noted above, in seeking this relief, he attempts to invoke this Court's federal question jurisdiction under Title VII, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1983.

### DISCUSSION

Plaintiff has previously filed a similar complaint[8] in state court, which was dismissed due to Plaintiff's failure to exhaust the administrative remedies provided in the Workers' Compensation Act. *Gyadu v. Chairman, Workers Compensation Commission,* No. 122258, 1994 WL 711199 (Superior Court, Judicial District of Waterbury, Conn., Memorandum of Decision Dec. 9, 1994). The Superior Court correctly noted that the Compensation Act contains an elaborate administrative procedure for the resolution of claims for compensation under the Act. Compensation Commissioners have the authority to hear all matters arising under the Act with respect to the entitlement to benefits. C.G.S.A. §§ 31–278, 31–297, 31–297a, 31–298. Their decisions are then subject to review by the Compensation Review Board. C.G.S.A. §§ 31–301(a), 31–280b(b). Additionally, the parties may seek further review of any question of law by the state appellate court. C.G.S.A. § 31–301b. Accordingly, the Superior Court dismissed Plaintiff's state court

complaint, finding that Plaintiff's claims seeking redress for the denial of an increase in benefits in accordance with the increase in the statutory maximum, for the denial of certain rehabilitative services, and the application of the allegedly incorrect discount rate to his application for a lump sum portion of his benefits fell within the scope of the administrative remedies provided by the Compensation Act and, therefore, were committed to the administrative review procedures therein.

Because of the constitutional claims now asserted by Plaintiff in his Amended Complaint, our task is not quite so easy. In ruling on Defendants' Motion to Dismiss, we consider each of the Plaintiff's Claims separately.

### I. *Plaintiff's Claims for Equitable Relief*

A careful review of Plaintiff's Amended Complaint indicates that what Plaintiff is primarily seeking in this federal forum is equitable relief from various decisions of the Compensation Commissioner. This is not the function nor province of this Court. We do not sit as an alternative forum to the administrative appeals process set forth in the Workers' Compensation Act. A workers' compensation claimant, unhappy with the outcome of a compensation hearing, may not come into this Court to obtain review of that decision absent some legitimate basis for invoking the federal jurisdiction of this Court.

The Second Circuit has recently addressed the permissible scope of the abstention doctrine in the case of *Tribune Co. v. Abiola,* 66 F.3d 12, 15–17 (2d Cir.1995), an action brought by a newspaper against its union employees, their unions, attorneys and doctors, alleging a conspiracy to submit fraudulent workers' compensation claims. The Second Circuit began its analysis with a discussion of the Supreme Court's decision in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *Burford* involved predominantly state law claims, as

---

7. Presumably, Plaintiff is referring to C.G.S.A. § 31–309, "Maximum Weekly Compensation. Determination of Average Weekly Earnings of Production and Related Workers in Manufacturing."

8. Plaintiff's state court complaint challenged the same actions of the Commission but it did not raise the constitutional issues asserted in this federal action.

well as a Fourteenth Amendment challenge to the Texas Railroad Commission's grant of an oil drilling permit, which the Court characterized as a "simple proceeding in equity to enjoin enforcement of the Commission's order." 319 U.S. at 317, 63 S.Ct. at 1099. In *Burford*, the Court held that, as a matter of sound equitable discretion, the district court had properly declined to exercise its jurisdiction because of several factors, including the complex state regulatory scheme involved, *id.* at 318–24, 63 S.Ct. at 1099–1103, the local importance of the matters before the regulatory agency, *id.* at 320, 63 S.Ct. at 1100–1101, the existence of a unified system of review of commission decisions by a single court, the potential for delay and misunderstanding of local law, needless conflict with the state policy by federal review, *id.* at 325, 63 S.Ct. at 1103, and because plaintiff's federal claims could be heard in the relevant state proceedings and would be "fully preserved" by appeal to the Supreme Court, if necessary, *id.* at 334, 63 S.Ct. at 1107. *Tribune Co.,* 66 F.3d at 15.

The Second Circuit then discussed the subsequent Supreme Court decision in *New Orleans Public Service, Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("*NOPSI*"), in which the "Supreme Court took pains ... to reiterate the narrow reach of *Burford* abstention, and to distill the distinctively equitable principles underlying that doctrine." 66 F.3d at 15. The Second Circuit noted that the Supreme Court in *NOPSI* held that "there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do,' " 491 U.S. at 359, 109 S.Ct. at 2513, and that a federal court asked to provide equitable relief "should be wary of interrupting the proceedings of state administrative tribunals by use of the extraordinary writ of injunction." *NOPSI,* 491 U.S. at 362, 109 S.Ct. at 2515.

Recognizing that there is a split among the Circuits as to whether the *Burford* abstention doctrine applies only when a federal court is sitting in equity, the Second Circuit, without expressly deciding the issue, held that only claims seeking equitable relief will "generally" pose a danger of interfering with state proceedings or orders. *Tribune Co.,* 66 F.3d at 16. Thus, we consider the abstention doctrine only with respect to Plaintiff's claims for equitable relief.

We have carefully considered the relief sought by Plaintiff and have determined that this is an appropriate case in which to exercise abstention as to the *equitable* remedies sought by Plaintiff with respect to the challenged actions of the Defendants. Here Plaintiff challenges decisions made under a relatively complex state system, which the State has relegated to a special administrative tribunal to resolve. This Court is in essence being asked to usurp the authority of the Connecticut Workers' Compensation Board and the Commissioner. Moreover, as to the relief that Plaintiff seeks with respect to the denial of his claim for a dependency allowance, Plaintiff has an administrative appeal pending, although he is upset by the length of time the appeals process is taking. And, as to the other rulings that he, in essence, is asking this Court to reverse, he has failed to file any appeals, claiming that the process takes too long.

Frustrated with the treatment that he has received by the Commission and Commissioner and having been unsuccessful in his attempts to get relief from the state court, Plaintiff now asks this federal court to intervene in the state workers' compensation process and to order the Defendants to take certain action. This we will not do.

Accordingly, we decline, based on principles of abstention, to exercise jurisdiction over Plaintiff's equitable requests for an order requiring Defendants: (a) to provide strategies that they will pursue to help Plaintiff seek gainful employment with income commensurate with that he was earning prior to his injury; (b) to adjust Plaintiff's weekly benefits; (c) to pay the cost of Plaintiff's training, including his student loan; (d) to provide on-the-job training assistance; (e) to refund his specific award for the permanent partial loss of the his hand, which award he exhausted in his search for a job; (f) to refund the three weeks of benefits that were withheld by the carrier; (g) to pay the dependency allowance; and (h) to continue to

support Plaintiff until they assist Plaintiff in securing gainful employment.

Therefore, Plaintiff's claims for equitable relief are dismissed.

### II. Plaintiff's Claims for Money Damages

We next turn to the issue of Plaintiff's claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983 for money damages against the various Defendants.

### A. Plaintiff's Title VII Claims

■ Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2. By its very terms it applies to employers. None of the Defendants listed by Plaintiff is alleged to have been his employer. Additionally, Plaintiff does not allege discrimination in employment on the basis of race, color, religion, sex, or national origin. Thus, Plaintiff has failed to state a cause of action under Title VII, and Title VII cannot serve as a basis for this Court's subject matter jurisdiction over Plaintiff's Amended Complaint. *See Smith v. U.S. Air Force,* 566 F.2d 957 (5th Cir.), *cert. denied,* 439 U.S. 819, 99 S.Ct. 80, 58 L.Ed.2d 109 (1978).

Plaintiff counters that Title VII covers disparate impact discrimination, citing *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), and claims that the cap on workers' compensation benefits and Defendants' denial of necessary vocational training had a disparate impact on him, since prior to his injury he was earning far in excess of average wage used to calculate the maximum weekly benefit. Thus, he argues that these statutory provisions are discriminatory.

Plaintiff is correct that Title VII does indeed cover discriminatory employment practices that have a disparate impact on members of a protected group. However, this theory of proof requires that an employment practice be challenged as discriminatory on the basis of race, sex, national origin, *et cetera*, which Plaintiff has not done. Plaintiff is challenging decisions of the Workers' Compensation Commission, as applied to him, and the effect of Connecticut's Workers' Compensation Act. These are not cognizable claims under Title VII under a disparate impact theory or under any other theory.

Therefore, Plaintiff has failed to state a claim under Title VII upon which relief may be granted.[9]

### B. Plaintiff's Section 1983 Claims

### 1. Plaintiff's Claims Against the State Agencies and Commissioner in his Official Capacity

■ Section 1983 of Title 42 authorizes the imposition of liability against "[e]very person" who, acting under color of state law, violates another person's federally protected rights. The Supreme Court in *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), has made clear that neither State agencies nor State officials acting in their official capacities are "persons" under section 1983. Thus, neither the Connecticut Workers' Compensation Commission nor Commissioner Mastropietro in his official capacity are "persons" subject to section 1983 liability.

■ Additionally, the Eleventh Amendment bars federal courts from entertaining suits brought by a private party against a State and State agencies. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Contrary to the argument made by Plaintiff, the Eleventh Amendment is not applicable only to the State itself, but its immunity protections extend to State agencies as well. *Id.* at 663, 94 S.Ct. at 1355–56; *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984); *Lipofsky v. Steingut,* 1996 WL 290216 (2d Cir. June 4, 1996) (State Insurance Fund is a state agency immune from suit under the Eleventh Amendment).

■ Plaintiff argues that sovereign immunity does not apply in this case because the

---

9. Additionally, Title VII requires an exhaustion of administrative remedies and a right-to-sue letter before an action may be commenced in federal district court. 42 U.S.C. § 2000e–5.

payments for benefits which have been denied the Plaintiff come from the insurance carrier, and not the State. But, Plaintiff has not sued the insurance carrier; he has sued a state agency, the State Workers' Compensation Commission, and is seeking money damages from the Commission, which would come from the State treasury, not from the insurance carrier. The Commission as a state agency is entitled to invoke the sovereign immunity protections of the Eleventh Amendment.

Additionally, the case of *Heffez v. Washington Metro Area Transit Authority,* 569 F.Supp. 1551 (D.D.C.1983), *aff'd* 786 F.2d 431 (D.C.Cir.1986), cited by Plaintiff is inapposite. *Heffez* did not involve a state agency, but rather a quasi-governmental entity created by an interstate compact, whose immunity was dependent upon the terms of the compact. The Connecticut Workers' Compensation Commission, unlike the Washington Metro Area Transit Authority, is clearly a state agency entitled to invoke the Eleventh Amendment immunity protections available to state agencies.

■ The Eleventh Amendment immunity to which a State official is entitled in a section 1983 suit depends on the capacity in which he is sued. To the extent that a State official is sued in his official capacity, such a suit is deemed to be a suit against the State, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the State. *Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993). As to claims brought against a State official in his or her individual capacity, the State official has no Eleventh Amendment immunity. *Id.*

10. In *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Supreme Court explained the difference between individual-capacity claims and official-capacity claims:

Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.... Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." ... As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit

It is unclear from Plaintiff's Amended Complaint whether his claims are against the Commissioner in his capacity as an official of the State, or in his individual capacity, or both.[10] Plaintiff's Amended Complaint names "Commissioner Mastropietro (In His Individual Capacity)—3d Defendant," but then states that the "3rd Defendant is a State Official," and alleges various claims against the Commissioner in connection with activities taken by him in his official capacity. Because Plaintiff is proceeding *pro se,* we will treat his complaint as stating both individual and official capacity claims against Commissioner Mastropietro. *See Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993).

The same rationale would apply to the Workers' Rehabilitation Commission, named as a Defendant, if such an entity existed.[11] However, no such agency exists. Accordingly, based on the legal principles set forth above, Plaintiff's section 1983 claims for money damages against both the State Workers' Compensation Commission and Commissioner Mastropietro *in his official capacity only* are dismissed in that they are not "person[s]" within the meaning of the statute and based on Eleventh Amendment State sovereign immunity.

## 2. Plaintiff's Claims Against the Commissioner in his Individual Capacity

This ruling, however, does not affect Plaintiff's claims against Defendant Commissioner Mastropietro in his individual capacity. As Plaintiff correctly points out, the Commissioner when sued individually is considered a "person" within the meaning of section 1983,

against the entity.... It is *not* a suit against the official personally for the real party in interest is the entity. *Id.* at 165–66, 105 S.Ct. at 3105 (citations omitted).

11. While under C.G.S.A. § 31–283a, the Worker's Compensation Commission is authorized to provide rehabilitation programs for employees suffering compensable injuries, according to Defendants, there is no state agency or entity known as the Workers' Rehabilitation Commission, and no such entity has been served by Plaintiff or appeared as a defendant in this action.

and is not entitled to invoke the protection of the Eleventh Amendment.

### a. The Commissioner's Absolute and Qualified Immunity

 Defendants assert in their motion to dismiss that the Commissioner, sued in his individual capacity, is entitled to absolute judicial immunity and qualified immunity as to the acts of which Plaintiff complains in his Amended Complaint. Whether an official is entitled to absolute or qualified immunity depends on the nature of the official's functions at tissue. "[I]mmunity is justified and defined by the *functions* it protects and serves, not by the persons to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988). As the Second Circuit recently held in *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994), "whether non-judicial officers merit quasi-judicial absolute immunity depends upon 'the functional comparability of their judgments to those of the judge,'" *citing Imbler v. Pachtman*, 424 U.S. 409, 423 n. 20, 96 S.Ct. 984, 991 n. 20, (1976).[12] Because the approach is functional rather than titular, an official may be absolutely immune from liability with respect to certain functions of his job, but enjoy only qualified immunity as to others. Schwartz, M., *Section 1983 Litigation: Claims, Defenses, and Fees* § 9.2 (2d ed. 1991).

In his Amended Complaint, Plaintiff complains about the Commissioner's ruling at a hearing allowing the insurance carrier to discontinue weekly benefits for a three-week period of time, which Plaintiff characterizes as giving his "blessing to the carrier's illegal action." (Count Two, page 5, 7). He complains about the Commissioner's calculation of Plaintiff's weekly benefits, which allegedly allowed the carrier to withhold $97.00 per week from Plaintiff's weekly benefit check. (Count Two, pages 5–6). He complains about the Commissioner's recommending that Plaintiff look for jobs that he contends "every available medical reports [sic] indi-

cates that the plaintiff is not capable of doing." (Count Two, pages 6–7). And, he complains about the Commissioner's failure to set an emergency hearing. (Count Two, page 9).

In the instant case, the duties of the Commissioner are set forth in C.G.S.A. § 31–278. He has the power to summon and examine under oath witnesses; he may direct the production of documents; he can order depositions; he can certify official acts and has "all the powers necessary to enable him to perform the duties imposed upon him by the provision of this chapter." C.G.S.A. § 31–278. He has the power to conduct hearings, which are governed by C.G.S.A. § 31–298. The hearings are of an adversary nature, conducted in accordance with the rules of equity, and the Commissioner has the authority to proceed "in a manner best calculated to ascertain the substantial rights of the parties and carry out the provisions and intent of this chapter." C.G.S.A. § 31–298. All testimony is recorded. Either party has a right to appeal. C.G.S.A. § 31–301.

 Persons performing adjudicatory functions in administrative agencies enjoy absolute immunity from liability for damages for their judicial acts. *Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913–14, 57 L.Ed.2d 895 (1978). "[A]dministration within a[n] ... administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudications should also be immune from suits for damages." 438 U.S. at 512, 98 S.Ct. at 2914. Thus, Commissioner Mastropietro's rulings concerning Plaintiff's entitlement to worker's compensation benefits were acts within his capacity as Commissioner, and thus, were "judicial acts." *See Messa v. Foley*, 1993 WL 106519 (E.D.Pa. April 9, 1993). Accordingly, Commissioner has absolute immunity with respect to those acts. Similarly, his decision about whether to hold an emergency hearing was a judicial act entitled to

---

**12.** The Second Circuit then listed six factors that, among others, should be considered in analyzing functional comparability: (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for pri-

vate damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of the error on appeal. *Id.*

absolute immunity. *See Messa v. Foley*, No. CIV. 92–1887, 1993 WL 106519 (E.D.Pa. Apr. 9, 1993). As to Plaintiff's claims against the Commissioner for his alleged miscalculation of Plaintiff's benefits and his recommending that Plaintiff seek certain jobs,[13] these claims relate to acts of the Commissioner that clearly were within the scope of his duties and he is at least entitled to qualified immunity as to those acts.[14]

■ In a section 1983 action, qualified immunity shields an official sued in his individual capacity "from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or, even, where the rights were clearly established, if it was objectively reasonable for the official to believe that his acts did not violate those rights. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *see also Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir.1991), *cert. denied*, 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

■ Nothing is alleged that would indicate that Commissioner Mastropietro's conduct violated clearly established rights. If anything, Plaintiff's Amended Complaint alleges that Commissioner Mastropietro was acting in accordance with the Workers' Compensation Act. Thus, we find that he is entitled to qualified immunity with respect to the specific acts alleged against him by Plaintiff.

**13.** It is unclear from Plaintiff's Amended Complaint exactly in what context these acts were taken—whether as part of a ruling or otherwise. Were we to have more facts, it is conceivable that these acts are entitled to absolute immunity. For purposes of this decision we need not go that far.

**14.** The state court judge in *Gyadu, supra*, ruled that the calculation of benefits was an "order or decision" of the Commissioner under section 31–301(a), C.G.S.A., that was subject to administrative review.

### b. Plaintiff's Failure to State a Claim Under Section 1983

■ Furthermore, to properly state a claim under section 1983, Plaintiff must allege that (1) he was deprived of a right secured by the Constitution and laws of the United States; and (2) the deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988). As the Supreme Court has repeatedly held, "section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Matters formerly within the exclusive cognizance of the states do not, by virtue of this section, necessarily become matters of national concern. *Snowden v. Hughes*, 321 U.S. 1, 11, 64 S.Ct. 397, 402–03, 88 L.Ed. 497 (1944).[15]

Plaintiff alleges that Defendants' actions which "gave their blessing" to the insurance carrier's withholding of his weekly section 308a, C.G.S.A. § 31–308a, benefits prior to a hearing denied him due process; that their denial of section 308 benefits, C.G.S.A. § 31–308, to him during his search for a job deprived him of "Equal Protection as well as Income Security" and violated his right to due process; and that their denial of a dependency allowance to him to care for his late sister's children denied him due process and subjected Plaintiff to "gross discrimination and a loss of Income Security."

■ As to the last claim, Plaintiff has an administrative appeal pending, and, therefore, this claim is not ripe for review by any court. *See Abbott Laboratories v. Gardner*,

**15.** Indeed, to the extent that Plaintiff's Amended Complaint could be read to allege a violation of state law by Defendants, even that conduct would not give rise to a cause of action under section 1983. *Oberlander v. Perales*, 740 F.2d 116 (2d Cir.1984). *Williams v. Treen*, 671 F.2d 892 (5th Cir.1982), *cert. denied*, 459 U.S. 1126, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983). Nor would Plaintiff's challenge of an allegedly erroneous determination by a state agency charged with enforcement of state law present a substantial federal question that would be encompassed by section 1983. *See Stenson v. State of New York*, 422 F.Supp. 38 (S.D.N.Y.1976).

387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967). As to his claims that the denial of section 308 benefits, C.G.S.A. § 31–308, violated his Equal Protection rights, Plaintiff has failed to alleged membership in a constitutionally protected suspect or quasi-suspect group. *See Phillips v. Ford Motor Co.,* 83 F.3d 235, 241 (8th Cir.1996). As best we can discern from his Amended Complaint, Plaintiff is complaining that he has been discriminated against on the basis of his pre-injury income, which was higher than the average used for purposes of calculating workers' compensation benefits. Plaintiff alleges no other basis for the alleged discrimination. It is difficult to understand how former membership in this higher income group could in any way affect whether he received section 308 benefits. Nevertheless, we find that Plaintiff has failed to state a claim under section 1983 based on an alleged violation of his rights under the Equal Protection Clause.

 Because Plaintiff has not alleged membership in a constitutionally protected group, equal protection concerns will be satisfied so long as the classification is rationally related to a legitimate state interest. *City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). The courts have repeatedly held that the states have a legitimate interest in controlling the costs of the workers' compensation system. *See, e.g., Veronie v. Garcia,* 878 F.2d 347 (10th Cir. 1989); *Fisher v. Reiser,* 610 F.2d 629 (9th Cir.1979), *cert. denied,* 447 U.S. 930, 100 S.Ct. 3029, 65 L.Ed.2d 1124 (1980); *Chiropractors for Justice v. Alaska,* 895 P.2d 962 (Alaska 1995). The constitutional violation alleged by Plaintiff relates to actions taken by Defendants in accordance with the State workers' compensation system and the statutes that regulate the payment of benefits. As discussed more fully below, we find this statutory scheme withstands an equal protection challenge on the ground that it is rationally related to the State's legitimate interest in regulating the costs of workers' compensation. Thus, we find that there is no set of facts that Plaintiff will be able to prove at trial that will support these vague, generalized allegations of an equal protection viola-

tion, so as to state a cause of action under section 1983.

 With respect to his claim that the suspension of his section 308a benefits, C.G.S.A. § 31–308a, prior to a hearing deprived him of due process, we first question whether there has been a sufficient allegation of a deprivation by someone acting under color of state law to state a claim under section 1983. It was the insurance carrier, not the Commissioner, that discontinued his benefits prior to a hearing. There is nothing to indicate that the Commission or Commissioner participated in this decision to terminate his benefits. *See Cryder v. Oxendine,* 24 F.3d 175 (11th Cir.1994). His obscure allegations that Defendants somehow gave their "blessing" to this action does not allege action under color of state law.

Further, as discussed more fully below, we find that the post-deprivation hearing afforded Plaintiff, as well as the administrative appeals process which Plaintiff refused to pursue, satisfy the due process requirements. Thus, we find no grounds upon which a constitutional claim could stand under the facts alleged in the Amended Complaint.

Accordingly, we find that Plaintiff has failed to allege a claim under section 1983 upon which relief may be granted. Additionally, because of the Commissioner's absolute and qualified immunity from liability in his individual capacity, we dismiss Plaintiff's claims for money damages against Defendant Mastropietro in his individual capacity.

### III. Plaintiff's Constitutional Challenges to the Connecticut Workers' Compensation Act

Last, we consider Plaintiff's challenges to the constitutionality of various provisions of the Connecticut's Workers' Compensation Act.

#### A. The Maximum Weekly Benefit Cap, C.G.S.A. § 31–309

As noted above, Plaintiff challenges the maximum weekly benefits cap, set forth in C.G.S.A. § 31–309, on equal protection grounds. Plaintiff asserts that it discriminates against him and others like him who

were high income wage earners at the time of their injuries, earning in excess of the average weekly wages used for purposes of calculating the maximum cap on weekly benefits.

A violation of the Equal Protection Clause may occur when a state enacts a law that has a special impact on less than all the persons subject to its jurisdiction. *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587, 99 S.Ct. 1355, 1366–67, 59 L.Ed.2d 587 (1979). However, the Fourteenth Amendment does not deny to the state the power to treat different classes of person in different ways. *Reed v. Reed*, 404 U.S. 71, 75, 92 S.Ct. 251, 253–54, 30 L.Ed.2d 225 (1971). If the groups are similarly situated, the legislation will be presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). If, however, the classification interferes with the exercise of a fundamental right or affects a suspect classification, a strict scrutiny analysis replaces the general rule or presumed validity.

An individual's high income does not place him or her in a constitutionally protected group. Therefore, where, as here, the classification created by the maximum cap on weekly benefits neither trammels a fundamental right nor burdens a suspect class, equal protection concerns will be satisfied if the classification is rationally related to a legitimate state interest. *See City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Giannattasio v. Stamford Youth Hockey Ass'n, Inc.*, 621 F.Supp. 825, 829 (D.Conn.1985). The classification in this case clearly meets this standard, for the State has a legitimate interest in controlling costs to employers of workers' compensation system. *See, e.g., Veronie, supra; Fisher v. Reiser, supra.* As the Supreme Court held in *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979), a statute that does not burden a suspect class or a fundamental interest should not be overturned "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Id.* at 97, 99 S.Ct. at 943. In light of our conclusion that the State has a legitimate interest in regulating the costs of the workers' compensation system to employers, we cannot conclude that it is irrational for the statute to place a cap on the maximum weekly benefits to be paid to compensation claimants. *See Texas Workers' Compensation Comm'n . v. Garcia*, 893 S.W.2d 504, 531 (Tex.S.Ct.1995).

*B. The Termination of Section 308a Benefits Prior to a Hearing*

Plaintiff complains that the statutory provisions that allow a workers' compensation carrier to terminate section 308a benefits, C.G.S.A. § 31–308a, prior to a hearing violates the due process clause. We disagree. As the Eleventh Circuit held in *Cryder v. Oxendine, supra,* "[d]ue process is a flexible concept that varies with the particular situation." 24 F.3d at 177. And, while the Supreme Court has held that due process requires a hearing before the termination of basic welfare benefits, *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court upheld a system which afforded an individual no right to a hearing until after disability payments had been terminated against due process challenges.

As with social security disability benefits, Plaintiff's eligibility for section 308a benefits is based on factors other than financial need. Plaintiff does not challenge the sufficiency of the notice that he received. He is primarily upset by the fact that the termination of these benefits by the insurance carrier occurred prior to the hearing. We believe that the post-termination hearing, which in this case took place two weeks after the termination of benefits, and the appellate remedies afforded by sections 31–301 and 31–301b, of which Plaintiff has not availed himself, satisfactorily comport with the dictates of due process. *See Campo v. New York City Employees Retirement System*, 843 F.2d 96 (2d Cir.) (due process did not require predeprivation hearing for failure to pay survivor bene-

fits), *cert. denied,* 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988); *Johnson v. Cohen,* 836 F.2d 798 (3d Cir.1987) (child eligible for Aid to Families with Dependent Children not entitled to predeprivation hearing before he was required to assign benefits to state welfare agency); *Signet Constr. Corp. v. Borg,* 775 F.2d 486 (2d Cir.1985) (due process did not require predeprivation hearing before city board withheld contract payments); *Al–Charles, Inc. v. Heintz,* 620 F.Supp. 327 (D.Conn.1985).

### C. The Law Which Denied Plaintiff Section 31–308 Benefits While He Was Looking for Employment and Required Him Instead to Exhaust the Specific Award for His Permanent Partial Disability

■ To state a due process claim, Plaintiff must allege that he had a protectible property interest in receiving section 31–308 benefits. *See Ortwein v. Schwab,* 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973); *Jovanovich v. Sweeney,* 12 F.3d 1106 (9th Cir.1993); *Fisher v. Reiser,* 610 F.2d 629, 636 (9th Cir.1979) (denial of supplemental benefits not based on necessity does not implicate the same constitutional concerns as denial of the benefit for basic subsistence), *cert. denied,* 447 U.S. 930, 100 S.Ct. 3029, 65 L.Ed.2d 1124 (1980). Plaintiff alleges that these benefits were terminated after his physician released him to look for a job within his physical capabilities. It appears that Plaintiff had reached the statutory maximum period for the payment of benefits. In either event, there is nothing to indicate that Plaintiff had a protectible property interest in receiving section 308 benefits during the time that he was looking for a job, as opposed to a lump sum award, which he received for his permanent partial disability.

### D. The Informal Hearing Process

■ The Supreme Court in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), held that the right to use state adjudicatory procedures is a constitutionally protected property interest. Since the Connecticut's Workers' Compensation Act establishes a comprehen-

sive scheme for adjudicating workers' compensation claims, *Logan* makes it clear that Plaintiff's right to seek redress for his workers' compensation claim using Connecticut's adjudicatory procedures is a constitutionally protected interest. Thus, the question presented to this Court, like the Supreme Court in *Logan,* is what process is due to Plaintiff. *Logan* emphasizes that the due process clause requires "an opportunity ... granted at a meaningful time and in a meaningful manner, for [a] hearing appropriate to the nature of the case." *Id.* at 437, 102 S.Ct. at 1159.

■ In this case, however, although Plaintiff alleges in the vaguest of terms that he was denied procedural due process by virtue of the informal hearing process, Plaintiff has failed to avail himself of the procedural protections afforded by Connecticut's Workers' Compensation Act. The Compensation Act establishes an administrative procedure for the review of decisions of the Commissioner. Plaintiff could have appealed this decision to the Compensation Review Board pursuant to section 31–301. This he has not done, choosing instead to file this lawsuit in federal court. Thus, the alleged deprivation could not have occurred as a result of some established state procedure, since Plaintiff chose not to follow established state procedures. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). *Paskaly v. Seale,* 506 F.2d 1209, 1212 (9th Cir.1974). Additionally, the mere assertion that state remedies are lengthy (Plaintiff complains about the length of the administrative appeals process) will not render state remedies inadequate unless they are "inadequate to the point that [they are] meaningless or nonexistent." *Easter House v. Felder,* 910 F.2d 1387, 1406 (7th Cir.1990) (*en banc* ), *cert. denied,* 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991).

### E. The Exclusive Remedy Provision

■ Last, Plaintiff challenges the exclusive remedy provision of Connecticut's Workers' Compensation Act, C.G.S.A. § 31–284. It is unclear from Plaintiff's Amended Complaint how he has been adversely affected by this statute, and, thus, whether he has stand-

ing to assert this challenge. It would seem that any claim that he would have had against his employer would have arisen from his 1986 injury, and presumably would be barred by the applicable statute of limitations. Nevertheless, we address the constitutional issue raised by Plaintiff.

In *Northern Pac. Ry. Co. v. Meese*, 239 U.S. 614, 36 S.Ct. 223, 60 L.Ed. 467 (1916), the Supreme Court summarily dismissed an equal protection challenge to a worker's compensation statute. And, in *New York Central R.R. Co. v. White*, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917), the Supreme Court upheld that state's authority to establish by legislation departures from common-law rules affecting an employer's liability for an employee's personal injuries. 243 U.S. at 200, 37 S.Ct. at 251–52. Since then, numerous courts have upheld the constitutionality of exclusive remedy clauses in state workers' compensation statutes. *See Davidson v. Hobart Corp.*, 643 F.2d 1386 (10th Cir.1981); *Lusson v. Carter*, 704 F.2d 646 (1st Cir.1983); *King v. Williams Industries, Inc.*, 724 F.2d 240 (1st Cir.1984), *cert. denied*, 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984); *Garcia v. American Airlines*, 816 F.Supp. 72 (D.P.R.), *aff'd* 12 F.3d 308 (1st Cir.1993). We agree and find no due process or equal protection problems arising from the exclusive remedy provision of Connecticut's Workers' Compensation Act.

### CONCLUSION

Therefore, for the reasons set forth above, we grant Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 16) in its entirety.

**SO ORDERED.**