Jon WHITE, Plaintiff,

v.

Louis MARTIN, Executive Director of the Connecticut Commission on Human Rights and Opportunities, Epifanio Carrasquillo, Acting Capitol Region Manager, Michelle Harding, Investigator and American Red Cross, Defendants.

No. 3:98CV00367 (GLG).

United States District Court, D. Connecticut.

Oct. 19, 1998.

James S. Brewer, West Hartford, CT, for Plaintiff.

David Kent, Assistant Commission Counsel, Commission on Human Rights and Opportunities, Hartford, CT, for Defendants.

## OPINION

GOETTEL, District Judge.

This is an employment discrimination case, in which the plaintiff has also sued Louis Martin, the former Executive Director of the Connecticut Commission on Human Rights and Opportunities ("CHRO"), Epifanio Carrasquillo, the Acting Capitol Region Manager, and Michelle Harding, a CHRO investigator (collectively referred to as the "CHRO defendants").[1] Plaintiff claims that the CHRO defendants, who have been sued in both their individual and official capacities, unlawfully violated his civil and due process rights by intentionally discriminating and retaliating against him by refusing to fairly investigate his complaint of sexual discrimination brought against his employer, the American Red Cross. (Plaintiff's Compl. at § I). Plaintiff has asserted claims under 42 U.S.C. § 1983 (Counts One, Two, and Three), under the State Constitution (Count Eight), and various state common-law theories (Counts Nine, Ten, Eleven, and Twelve). The CHRO defendants have moved to dismiss plaintiff's claims against them in their entirety based upon lack of subject matter jurisdiction, lack of personal jurisdiction, insufficiency of process, and failure to state a claim upon which relief may be granted.

### Background

On February 2, 1994, plaintiff filed a complaint with the CHRO alleging gender-based discrimination by his employer, the American Red Cross, in failing to promote him. On or about April 8, 1996, the CHRO investigator Yvonne Duncan issued a Draft Reasonable Cause Finding in the plaintiff's favor. The American Red Cross responded to this draft finding. Thereafter, on June 28, 1996, plaintiff amended his charge to add claims of

---

1. The CHRO defendants state in a footnote that it is not entirely clear from the complaint whether the plaintiff has named the CHRO independently as a defendant. We do not read the complaint as naming the CHRO as a defendant, and the plaintiff does not indicate otherwise in his responsive memorandum.

retaliation. On July 10, 1996, the CHRO filed a "Final Reasonable Cause Determination," to which the American Red Cross objected on the ground that it had not had an opportunity to respond to plaintiff's amended complaint. The final determination was rescinded to allow a response. Plaintiff's case was then reassigned to another investigator, defendant Michelle Harding, allegedly at the behest of ARC. On or about December 3, 1996, after issuing a "Draft Finding of No Probable Cause," Harding issued the "Notice of Final Agency Action," which reversed Duncan's previous finding in plaintiff's favor, and dismissed plaintiff's case on the merits.

On January 27, 1997, the plaintiff filed an administrative appeal with the Connecticut Superior Court, pursuant to the Uniform Administrative Procedures Act, C.G.S.A. § 4–183, challenging the determination of the CHRO.[2] This appeal was dismissed by the state court on November 10, 1997, for lack of subject matter jurisdiction, because the appeal was untimely.[3] No appeal was taken from that decision.

On February 24, 1998, plaintiff filed the instant suit alleging, *inter alia*, that the decision of the CHRO defendants to reverse and abandon the first finding of reasonable cause and thereafter to dismiss the plaintiff's charge for no reasonable cause harmed him and deprived him of his constitutional rights to due process and equal protection.

All defendants have moved to dismiss plaintiff's complaint in its entirety. This Court has previously ruled on the motion to dismiss of the American Red Cross. The instant decision pertains only to the motion to dismiss of the CHRO defendants, which this Court will grant for the reasons set forth below.

**2.** The right to appeal arises from C.G.S.A. § 46a–94a, which provides that a complainant aggrieved by the dismissal of his complaint may appeal the decision pursuant to C.G.S.A. § 4–183, the Uniform Administrative Procedures Act.

**3.** Section 4–183(c) provides a 45–day period for filing an appeal to the Superior Court.

**4.** Plaintiff complains of defendants' decision to reverse and abandon the first finding of reasonable cause and thereafter to dismiss plaintiff's

## Discussion

*Plaintiff's Claims Against the CHRO Defendants in Their official Capacities*

The Eleventh Amendment to the United States Constitution bars suits against state officials sued in their official capacities, since these are regarded as another form of claim against the state itself. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). To waive its Eleventh Amendment immunity, a state must unequivocally express its consent to suit. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238 n. 1, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). In the present case, the Connecticut CHRO has not done so. *See Northup v. Connecticut Commission on Human Rights & Opportunities,* No. CIV 3:97–211 DJS, 1998 WL 118145, at n. 3 (D.Conn. Feb.2, 1998).

An exception to this immunity has been recognized by the Supreme Court in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which permits prospective injunctive relief against state officials for ongoing federal law violations. This exception, however, has been held not to apply to cases involving purely retroactive relief. *Green v. Mansour,* 474 U.S. 64, 73, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); *see also Baba v. Japan Travel Bureau Int'l, Inc.,* 111 F.3d 2, 5 (2d Cir.1997) (dismissing on Eleventh Amendment grounds plaintiff's due process claims against the state department of human rights for administrative bias in investigating her complaints against her employer); *Marbley v. Bane,* 57 F.3d 224, 232 (2d Cir.1995) (holding that Eleventh Amendment bar applies where there is no continuing violation to enjoin). Because the instant complaint contains no allegations of a continuing violation and seeks no prospective, injunctive relief,[4]

case for no reasonable cause. Plaintiff's Compl. at ¶ 8. In his prayer for relief, plaintiff seeks only monetary relief and "such other relief in law or equity as the Court may deem appropriate." Compl. at p. 15. In paragraph 17, plaintiff does allege that he has "no plain speedy or adequate remedy at law and therefore injunctive relief is absolutely necessary," but there is no allegation of a continuing violation of plaintiff's rights by the CHRO defendants, whose involvement with

we find that plaintiff's claims against the CHRO defendants in their official capacities are barred by the Eleventh Amendment. *See Baba*, 111 F.3d at 5 (holding that it is "beyond cavil" that the plaintiff's suit against the state department of human rights, seeking equitable and legal relief for its flawed investigation of her complaint, was barred by the Eleventh Amendment).

Additionally, in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Supreme Court forbid a federal court from awarding injunctive relief against state officials, sued in their official capacities, on the basis of a violation of state statutory or state common-law. The Supreme Court in *Pennhurst* stated: "[I]t is difficult to think of a greater intrusion of state sovereignty than when a federal court instructs state official on how to conform their conduct to state law." *Id.*

Accordingly, all official capacity claims against the CHRO defendants are dismissed on the basis of Eleventh Amendment immunity.

*Plaintiff's Section 1983 Claims Against the CHRO Defendants in Their Individual Capacities*

 The plaintiff has also sued the CHRO defendants in their individual capacities for alleged violations of his federal and state constitutional rights. 42 U.S.C. § 1983. The CHRO defendants assert that this claim is barred by their personal absolute and qualified immunities. Whether an official is entitled to absolute or qualified immunity depends on the nature of the official's functions at issue. "[I]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Officials who carry out special functions, principally judges and prosecutors, are generally protected against personal liability

under section 1983 by absolute immunity. Officials who carry out administrative and executive functions are protected by qualified immunity. 1B Martin A. Schwartz, *Section 1983 Litigation: Claims and Defenses* § 9.2 (3d ed.1997). As the Second Circuit held in *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir.1994), *cert. denied*, 514 U.S. 1102, 115 S.Ct. 1837, 131 L.Ed.2d 756 (1995), "whether non-judicial officers merit quasi-judicial absolute immunity depends upon 'the functional comparability of their judgments to those of the judge,'" citing *Imbler v. Pachtman*, 424 U.S. 409, 423 n. 20, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).[5] Because the approach is functional rather than titular, an official may be absolutely immune from liability with respect to certain functions of his job, but enjoy only qualified immunity as to others. 1B Schwartz, at § 9.2. In *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1147–48 (2d Cir.1995), the Second Circuit reaffirmed that a district court should engage in a functional approach to determine whether individual defendants were entitled to absolute immunity for their activities. The Court further emphasized that immunity attaches to the function performed by the individual, not the way he performed it. *Id.* at 1148.

The CHRO defendants base their claim of absolute immunity on the quasi-judicial and quasi-prosecutorial functions that they serve as CHRO officials in investigating charges of discrimination and in making determinations of whether probable cause exists. *See Butz v. Economou*, 438 U.S. 478, 512–17, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (holding that executive agency officials performing functions "functionally comparable" to those of a judge or prosecutor are entitled to absolute immunity with respect to those functions); *Spear v. Town of West Hartford*, 954 F.2d 63 (2d Cir.) (extending quasi-prosecutorial immunity to the town manager and corporation counsel, who authorized a civil lawsuit in

plaintiff's discrimination charge ended nearly two years ago.

**5.** The Second Circuit then listed six factors that, among others, should be considered in analyzing functional comparability: (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the pres-

ence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of the error on appeal. *Young v. Selsky*, 41 F.3d at 51.

pursuit of the town's governmental interests), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992). Defendants argue that the CHRO process is part of a comprehensive state-federal investigatory scheme designed to remedy illegal discriminatory practices under the state and federal civil rights laws. They assert that the FEPA provides detailed complaint review and investigatory procedures, C.G.S.A. § 46a–83; that it gives the CHRO the authority to make reasonable cause and no reasonable cause determinations, C.G.S.A. § 46a–83(a);[6] that it provides the CHRO with authority to pursue injunctive relief in state court to prevent irreparable harm to a complainant, C.G.S.A. § 46a–89; and that it provides for a right to reconsideration and/or appeal to state court from decisions of the CHRO, C.G.S.A. §§ 46a–83, –83a, –94a.

Plaintiff responds that he is not challenging the CHRO's decision-making functions, which he seems to concede would be entitled to immunity. Rather, he states that he is complaining of the individual defendants' actions in creating a "de facto state policy" (apparently, that being the changing of investigators and the reversal and abandonment of the first finding of reasonable cause and thereafter dismissing plaintiff's case for no reasonable cause, Plaintiff's Compl. at ¶ 8), which violated his due process and equal protection rights. Plaintiff's Responsive Memo. at 6.

Although plaintiff now seeks to characterize the CHRO defendants' actions as a "policy," what plaintiff is challenging is the CHRO's decision-making process and the decisions themselves. In *Butz v. Economou,* 438 U.S. at 512–13, 98 S.Ct. 2894, the Supreme Court extended the concept of absolute judicial immunity to federal hearing examiners and administrative law judges because the agency adjudication contained many of the same safeguards as are available in the judicial process and that their role was functionally comparable to that of a judge. As the Supreme Court stated in *Butz,*

> [A]djudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages. The conflicts which the federal hearing examiners seek to resolve are every bit as fractious as those which come to court.... Moreover, federal administrative law requires that agency adjudications contain many of the same safeguards as are available in the judicial process.

438 U.S. at 512, 98 S.Ct. 2894 (citations omitted). The Supreme Court noted that the federal hearing examiners and administrative law judges were insulated from political influence and exercised independent judgment on the evidence. *Id.*

Applying this rationale, a number of courts have held that state hearing officers who exercised independent quasi-judicial powers were entitled to absolute judicial immunity. *See, e.g., O'Neal v. Mississippi Board of Nursing,* 113 F.3d 62, 66 (5th Cir.1997) (absolute immunity protected members of state licensing board who conducted adjudicatory nursing license revocation hearings); *Collyer v. Darling,* 98 F.3d 211, 222 (6th Cir.1996) (state personnel review board members were absolutely immune from monetary relief with respect to their adjudicatory functions), *cert. denied,* —— U.S. ——, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997); *Saavedra v. Albuquerque,* 73 F.3d 1525, 1530 (10th Cir.1996) (personnel hearing officer and members of personnel board were protected by quasi-judicial immunity); *Wang v. New Hampshire Bd. of Registration in Medicine,* 55 F.3d 698, 701 (1st Cir.1995) (state medicine board members involved in license revocation proceedings were entitled to absolute quasi-judicial and quasi-prosecutorial immunity); *Gyadu v. Workers' Compensation Commission,* 930 F.Supp. 738 (D.Conn.1996) (state workers' compensation commissioner entitled to absolute immunity), *aff'd,* 129 F.3d 113 (2d Cir.

---

**6.** The statute imposes upon the investigator a duty to determine if there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint. C.G.S.A. § 46a–83. The investigator is given discretion to determine whether the facts of the complaint are sufficient to support a finding that there exists reasonable cause to believe that a discriminatory practice has occurred within the meaning of the law. *Id.*

1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 49, 142 L.Ed.2d 38 (1998); *Scott v. American Bar Ass'n,* 652 F.Supp. 1419 (E.D.Pa.1987) (holding that absolute immunity bars due process and equal protection claims against Pennsylvania Human Relations Commission); *Stanley v. Indiana Civil Rights Comm'n,* 557 F.Supp. 330, 334 (N.D.Ind.), *aff'd,* 740 F.2d 972 (7th Cir.1984) (holding the Commissioner and Director of the Indiana Civil Rights Commission immune from suit for dismissing plaintiff's complaint for lack of jurisdiction).

■ In this case, plaintiff challenges the actions of the executive director, the acting regional manager, and one of the investigators in connection with their handling the investigation of his discrimination complaint and their decisions to change investigators and their issuance of a final determination of no reasonable cause. It is unclear from the complaint what actions plaintiff is attributing to each of the defendants. However, their finding of no reasonable cause and their decision not to prosecute plaintiff's claim are clearly quasi-judicial functions entitled to absolute immunity. As part of the coordinated state-federal administrative scheme for enforcing the antidiscrimination laws, these defendants must be permitted to perform their duties without the threat of individual liability for damages. The same can be said for the CHRO proceedings. The FEPA provides sufficient safeguards for a complainant to be heard, to obtain review of these findings and to preserve the independence of the CHRO. Thus, the CHRO defendants' reasonable cause determinations were acts made by them in their capacity as officers of the CHRO and were adjudicatory functions entitled to absolute immunity. *See Messa v. Foley,* No. CIV 92–1887, 1993 WL 106519, at *2 (E.D.Pa. April 9, 1993). Accordingly, we hold that the CHRO defendants are entitled to absolute immunity as to plaintiff's section 1983 against them with respect to their quasi-judicial functions.

■ To the extent that the plaintiff is challenging any other functions of the CHRO defendants that would not be considered quasi-judicial or quasi-prosecutorial, we find that they are entitled at least to qualified immunity. In a section 1983 action, qualified immunity shields an official sued in his individual capacity "from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), or, even, where the rights were clearly established, if it was objectively reasonable for the official to believe that his acts did not violate those rights. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

■ The plaintiff has failed to allege the violation of clearly established law in any of the conclusory paragraphs of his complaint, which mention only due process and equal protection violations. We are not aware of any constitutional right, whether cast as a due process right or an equal protection right, that guarantees a civil rights complainant the right to have a single investigator throughout the course of a CHRO investigation or that guarantees that the final determination will be the same as the draft ruling or that guarantees a complainant a favorable ruling. Plaintiff makes no other claim as to how his due process rights were violated. As the First Circuit held in *Johnson v. Rodriguez,* 943 F.2d 104, 110 (1st Cir.1991), *cert. denied,* 502 U.S. 1063, 112 S.Ct. 948, 117 L.Ed.2d 117 (1992), a case brought against the Massachusetts Commission Against Discrimination, "[i]nsofar as [plaintiff's] arguments are veiled attempts to obtain judicial review of the correctness of [defendants'] negative determination, it is clear that we have no power to provide redress." *See also Angelsea Productions, Inc. v. Commission on Human Rights and Opportunities,* 236 Conn. 681, 674 A.2d 1300 (1996) (holding that complainant was not deprived of due process by failure of CHRO to make reasonable cause determination in discrimination complaint or to hold a public hearing). Moreover, the plaintiff has not alleged that he is a member of a class that was treated differently by the CHRO defendants than other similarly situated individu-

als or that he was subjected to any class-based or invidious discrimination. *See Phillips v. Ford Motor Co.*, 83 F.3d 235, 241 (8th Cir.1996).

In *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court held that "[u]nless plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Plaintiff's section 1983 counts fail to allege facts that would constitute a violation of either the due process clause or the equal protection clause. Therefore, we hold that the CHRO defendants are entitled to qualified immunity with respect to the investigative functions they performed.

Accordingly, we find that the CHRO defendants sued in their individual capacities are entitled to absolute and qualified immunity from liability, and, thus, we dismiss plaintiff's section 1983 claims against them in Counts One, Two and Three of the complaint.

*State Common–Law Claims*

■ The plaintiff has withdrawn Counts Ten and Eleven as to the CHRO defendants and, therefore, the Court will not address the merits of the motion to dismiss as to these two counts. As to the remaining state claims, because all federal claims have been eliminated from this lawsuit, we decline to exercise supplemental jurisdiction over any of the remaining state claims against the CHRO defendants and dismiss these without prejudice. 28 U.S.C. § 1367(c)(3).

### Conclusion

Accordingly, we dismiss plaintiff's claims in against the CHRO defendants in their official capacities on Eleventh Amendment grounds. We dismiss Counts One, Two, and Three against the CHRO defendants in their individual capacities on grounds of absolute and qualified immunity. The plaintiff has dropped Counts Ten and Eleven against the CHRO defendants. As to the remaining state-law counts, the Court declines to exercise its supplemental jurisdiction over these claims and dismisses them without prejudice. Defendants' Motion to Dismiss **[Doc. # 13]** is

GRANTED as to all Counts. The Clerk is directed to enter Judgment accordingly.

SO ORDERED.