**Acey WILLIAMS, Plaintiff,**

v.

**H.N.S. MANAGEMENT CO., INC. et al., Defendants.**

**No. 3–98–CV–738 (WWE).**

United States District Court, D. Connecticut.

June 28, 1999.

James S. Brewer, William Francis O'Shea, West Hartford, CT, for Plaintiff.

Hugh F. Murray, III, Michael C. Harrington, Murtha, Cullina, Richter & Pinney, Hartford, CT, for Defendants HNS Mgmt. Co., Inc., David A. Lee, Michael Blondin, Thomas Crispino, Nicholas Mangene.

Charles Henry Walsh, III, Atty. Gen.'s Office, Hartford, CT, for Defendant James F. Sullivan.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff, Acey Williams, has filed a multi-party, multi-count complaint against H.N.S. Management Company, Inc. ("H.N.S."), four individual managerial employees of H.N.S., and James Sullivan, the Commissioner of the Connecticut Department of Transportation. Specifically, Mr. Williams alleges violation of 42 U.S.C. § 1983, age discrimination, disability discrimination, and common law tort claims.

H.N.S. and its four managerial employees have moved for summary judgment on all counts except six, eight, ten, and fifteen, which counts are made solely against Commissioner Sullivan. Plaintiff opposes the defendants' motion for summary judgment.

Both parties have submitted evidentiary materials and statements of facts in compliance with Local Rule 9. For the following reasons, defendants' motion will be GRANTED.

### Background

H.N.S. is a privately-owned corporation that has contracted with the State of Connecticut to provide bus service to the Hartford, New Haven and Stamford metropolitan areas.

In 1997, H.N.S. employed David Lee as general manager, Michael Blondin as assistant general manager for transit services, Thomas Crispino as assistant superintendent of transportation, and Nicholas Mangene as transportation manager.

Mr. Williams was employed by H.N.S. as a bus driver since 1976. In his deposition, Mr. Williams stated that, early on in his career as a driver, he spoke to his supervisor about how the drivers needed better access to bathroom facilities. According to Mr. Williams, the supervisor advised him to bring a large cup or pail with him in order to relieve himself.

In 1992, Mr. Williams was diagnosed with a diabetic condition, which is controlled with medication and does not require insulin. As a result of either his diabetic condition or medication, Mr. Williams has experienced the need to urinate frequently. The diabetic condition has not otherwise interfered with his job responsibilities.

After his diagnosis, Mr. Williams discussed the effects of the medication upon his driving ability with Mr. Mangene. However, Mr. Williams did not request that H.N.S. provide facilities or designate more rest areas to accommodate his excessive urination that resulted from either his medication or diabetic condition.

During Mr. Williams's career, H.N.S. received complaints from female passengers alleging that Mr. Williams made harassing comments and gestures. In 1993, Mr. Williams received extensive counseling by H.N.S.'s Employee Assistance Program regarding his improper conduct.

In 1995, Mr. Williams filed a worker's compensation claim for carpal tunnel syndrome, underwent corrective surgery, was out on leave for approximately nine to twelve months, and then returned to full duty.

In early 1997, Mr. Williams drove the Q route. In April of that year, he was assigned the P route, which was known to have less access to restroom facilities than other routes. On his bid form, Mr. Williams had indicated that the P route was his first choice of routes to be assigned.

The majority of businesses along the bus routes allowed Mr. Williams to use their facilities when they were open for business. However, Mr. Williams often used a cup to relieve himself on the bus, even when his bus was idle at Central Row in downtown Hartford. Mr. Williams was aware that H.N.S. did not approve of public urination.

In June, 1997, a female passenger lodged a complaint with H.N.S., alleging that Mr. Williams had publicly urinated in his bus while she was sitting on the bus.

H.N.S. engaged Reilly's Adjusting Service to investigate the complaint and interview the passenger. Mr. Crispino reviewed the investigator's interview report. On June 30, 1997, Mr. Crispino placed Mr. Williams on investigatory suspension pending completion of the investigation.

That same day, Mr. Crispino spoke with Alvin Douglas, Mr. Williams's union representative from Amalgamated Transit Union. He informed Mr. Douglas that Mr. Williams was placed on investigatory suspension due to the passenger's complaint

and that they wished to meet with Mr. Williams to hear his side of the story and complete the investigation. Mr. Douglas indicated that he did not want Mr. Williams to meet with H.N.S. management. Mr. Williams and Mr. Douglas then met for several hours to discuss the implications of the complaint, suspension, and investigation. Mr. Williams later discussed the situation with his wife.

Mr. Williams knew that he was allowed to have a union representative present whenever he was disciplined. He was also aware that any disciplinary action taken by H.N.S., including discharge, could be successfully challenged through the grievance procedure.

Nevertheless, Mr. Williams voluntarily resigned the next day, July 1, 1997. He never discussed his decision to resign with anyone from H.N.S. management. Mr. Williams did not request more time to consider his decision to resign.

*Discussion*

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

A. *Section 1983*

In counts one through five of the amended complaint, Mr. Williams asserts that H.N.S. and its managerial employees deprived him of his right to due process and equal protection in violation of Section 1983.

In order to state a claim pursuant to Section 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993).

Even assuming that the defendants have acted under the color of state law, plaintiff's Section 1983 claim will fail. Due process guarantees that before the state may deprive an individual of life, liberty or property, he or she will be provided with procedural protections as the particular situation demands. *Gilbert v. Homar,* 520 U.S. 924, 930, 117 S.Ct. 1807, 1812, 138 L.Ed.2d 120 (1997). However, an employee's voluntary resignation effectively deprives the employer of the opportunity to comply with such procedural obligations and forecloses the employee from seeking the protections of his rights as an employee. *Finley v. Giacobbe,* 79 F.3d 1285, 1296 (2d Cir.1996).

Mr. Williams argues that he was forced or coerced into resigning by his supervisors, who were motivated by age

and disability discrimination. However, the undisputed facts reveal that only Mr. Douglas advised Mr. Williams about the implications of the complaint and H.N.S.'s investigation. Furthermore, as will be discussed, Mr. Williams has not submitted any evidence of either age or disability discrimination.

■ Since the evidence indicates that Mr. Williams resigned voluntarily, H.N.S. was not required to provide him with any further process. If Mr. Williams had been terminated, he could have availed himself of the grievance procedure of which he was aware. Therefore, summary judgment is appropriate as to counts one through five.

## C. *Age Discrimination*

According to Mr. Williams, H.N.S. and its managerial employees discriminated against him based on his age in violation of the Age Discrimination in Employment Act ("ADEA") and Conn.Gen.Stat. § 46a–60. The federal and state law discrimination claims will be reviewed together since the relevant federal precedent is applicable to Connecticut's anti-discrimination law. *See Levy v. Commission on Human Rights and Opportunities*, 236 Conn. 96, 103, 671 A.2d 349 (1996).

To establish a prima facie age discrimination claim, the plaintiff must demonstrate that (1) he belongs to a protected class; (2) he was qualified to continue employment; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

If the plaintiff establishes a prima facie case, any presumption of discrimination is removed once the defendant articulates a legitimate, non-discriminatory business reason for the alleged discriminatory action. *Grady v. Affiliated Cent., Inc.* 130 F.3d 553, 559 (2d Cir.1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 349, 142

L.Ed.2d 288 (1998). The plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ In this instance, Mr. Williams, who was within ADEA's protected class, asserts that the adverse employment action took place under circumstances giving rise to an inference of age discrimination. In support of this claim, Mr. Williams avers that he overheard his co-workers commenting on H.N.S.'s history of terminating or discharging older employees or employees with seniority. However, these speculative assertions by non-supervisory employees are insufficient to raise an inference that H.N.S. made its employment decision related to considerations of Mr. Williams's age. *See Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995). Since Mr. Williams has not established a prima facie case, summary judgment will enter as to as to counts six through ten.

## D. *Disability Discrimination*

Mr. Williams asserts that H.N.S. and its managerial employees harassed, intimidated and discharged him because of his diabetes and his carpal tunnel syndrome in violation of the Americans with Disabilities Act ("ADA") and Conn.Gen.Stat. § 46a–60(a)(1).

Where an employer is subject to the ADA, the plaintiff may establish a prima facie case of disability discrimination by showing that (1) he suffers from a disability within the meaning of the ADA; (2) he could perform the essential functions of his job with or without reasonable accommodation; and (3) he was fired because of his disability.

■ Plaintiff argues that Mr. Williams is not disabled within the meaning of the ADA. The ADA defines "disability" as "a physical or mental impairment that sub-

stantially limits one or more of the major life activities of the individual." 42 U.S.C. § 12102(2)(A). With respect to the major life activity of working, an individual is substantially limited when he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630(j)(3). An impairment that disqualifies a person from a narrow range of jobs is not a substantial limitation. *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

■ In this instance, Mr. Williams filed a worker's compensation claim for carpal tunnel syndrome and underwent corrective surgery in 1995. He then resumed his full duties as a bus driver and worked consistently until his resignation in 1997. Therefore, Mr. Williams's carpal tunnel syndrome does not constitute a disability within the ADA.

■ Mr. Williams also claims that his diabetes significantly restricts his major life activity of employment because it causes him frequent urination. However, Mr. Williams's condition restricts him from only a narrow set of jobs in his profession as a driver where restrooms are not frequently accessible. Therefore, Mr. Williams has not demonstrated that his condition constitutes an impairment substantially limiting his major life activity of working. Summary judgment will enter in H.N.S.'s favor on Mr. Williams's counts based on disability discrimination.

### E. *Reckless and/or Malicious Termination*

■ Count seventeen asserts a common law claim of recklessness and maliciousness against the managerial employees of H.N.S. Mr. Williams has offered no authority to support this cause of action. The Court agrees with the defendant that no such cause of action exists in Connecti-

cut's common law. *See White v. Martin*, 26 F.Supp.2d 385 (D.Conn.1998) (recklessness and maliciousness not a cause of action under common law of Connecticut). Summary judgment will enter as the count seventeen.

### F. *Negligence*

■ In count eighteen, Mr. Williams asserts a general claim of negligence by the managerial employees of H.N.S. Mr. Williams alleges that these defendants were negligent in investigating, discriminating, disciplining, harassing or coercing him without legal justification, or for failing to prevent others from doing so. As discussed in the opinion in *White*, plaintiff cannot circumvent statutory remedies available for claims of employment discrimination and harassment by alleging a common law claim of negligence in discipline or harassment. *See also Murray v. Bridgeport Hosp.*, 40 Conn.Supp. 56, 60, 480 A.2d 610 (1984). Summary judgment will enter as to count eighteen.

### G. *Negligent Infliction of Emotional Distress*

■ Count nineteen alleges negligent infliction of emotional distress against the managerial employees of H.N.S. To prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant knew or should have known that its conduct involved an unreasonable risk of causing emotional distress and that the distress if it was caused might result in illness or bodily harm. *Thomas v. Saint Francis Hospital And Medical Center*, 990 F.Supp. 81, 91 (D.Conn.1998).

■ In the employment context, a claim for negligent infliction of emotional distress arises only where it is based upon the unreasonable conduct of the defendant in the termination process. *Parsons v. United Technologies Corp.*, 243 Conn. 66, 88–89, 700 A.2d 655 (1997). The mere termination of employment is not by itself enough to sustain a claim for negligent infliction of emotional distress even if wrongfully motivated.

222

In this instance, all inferences of fact demonstrate that Mr. Williams voluntarily resigned from his position prior to termination. Furthermore, Mr. Williams has adduced no evidence indicating that the defendants conducted themselves unreasonably in investigating the complaint, notifying Mr. Williams of his suspension, or discussing the situation with Mr. Douglas. Therefore, summary judgment will enter as to count nineteen.

### H. *Intentional Infliction of Emotional Distress*

Count twenty alleges intentional infliction of emotional distress against H.N.S. and its managerial employees. Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds of decent society and that is calculated to cause, and does cause, mental distress of a very serious kind. *DeLaurentis v. New Haven,* 220 Conn. 225, 266–67, 597 A.2d 807 (1991). Mere insults indignities or annoyances that are not extreme or outrageous will not suffice. *Brown v. Ellis,* 40 Conn.Supp. 165, 167, 484 A.2d 944 (1984).

In this instance, no evidence suggests that the defendants calculated to inflict mental distress upon Mr. Williams by engaging in conduct which exceeds all bounds of decent society. Therefore, summary judgment will enter on the twentieth count.

### *Conclusion*

For the foregoing reasons, defendants' Motion for Summary Judgment [Doc. No. 39] is GRANTED as to counts one, two, three, four, five, seven, nine, eleven, twelve, thirteen, fourteen, sixteen, seventeen, eighteen, nineteen, and twenty of the amended complaint.

SO ORDERED.